IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANHAVEN, LLC, <br><br> Plaintiff and Counter-Defendant, <br><br> vs. <br><br> BEEFTEK, INC., BT SELECTION, LLC and PRIMEBEEFMARKER, LLC <br><br> Defendants and Counter-Plaintiffs <br><br> vs. <br><br> SCIDERA, INC. <br><br> Third-Party Defendant. | Civil Action No.: 1:11-cv-02334-WDQ |

## DEFENDANTS' MOTION FOR SANCTIONS

Defendants BeefTek, Inc., BT Selection, LLC and PrimeBeefMarker, LLC (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 26(g)(3), move for sanctions against plaintiff Branhaven, LLC ("Branhaven") for discovery abuses intended to harass Defendants, cause unnecessary delay, and needlessly increase the cost of litigation. Defendants respectfully request that the Court award reasonable attorneys' fees and expenses to Defendants as a result of Branhaven's violations and bar Branhaven from using documents produced in its July 20, 2012 after-hours "document dump."

### INTRODUCTION

Defendants are well aware that the Court prefers not to get involved with discovery disputes between parties to litigation. For this reason, Defendants largely have remained silent in the face of Branhaven's mounting delays and increasingly unbelievable excuses. After the close

of business on Friday, July 20, 2012, however, Branhaven produced the proverbial straw that broke the camel's back – a long-delayed "document dump" of well over **100,000 pages** less than a week before the long-delayed deposition of Branhaven's corporate designee.  This is only the latest in a string of discovery abuses calculated to harass Defendants and delay the proceedings, despite the fact that it was Branhaven who filed suit in the first place.  These abuses include the following:

- Branhaven has consistently missed document production deadlines, including those put forth by the Court, those agreed to between the parties, and those unilaterally set by Branhaven itself, despite:  (i) having filed suit against Defendants in August 2011, almost a year ago; (ii) having all documents in their possession, custody, and control since before that time; and (iii) having received Defendants' document requests in January 2012.

- Even though Branhaven filed suit nearly a year ago, Branhaven has allegedly "found" several different caches of documents in the past month, nearly six months into discovery.  Among these caches of documents is an entire e-mail server, which it apparently did not search for responsive documents until July 2012.

- Despite having entered into a Protective Order on June 1, 2012, thereby clearing the way for document production, Branhaven produced only 388 pages of documents in the seven weeks between June 1 and July 19, 2012, which included numerous non-responsive documents, duplicates, and blank pages.

- On June 21, 2012, Branhaven issued four Rule 45 subpoenas for the depositions of four non-party witnesses without alerting Defendants.  The subpoenas scheduled all four depositions for Friday, June 29, 2012, one business day before the close of discovery, at the exact same time, in four different states.  Despite having issued the subpoenas on June 21, and despite having participated in an additional non-party deposition with Defendants on June 22 during which counsel to Branhaven should have personally informed Defendants of the desired depositions, Branhaven did not serve copies of the subpoenas on Defendants or otherwise make them aware of the subpoenas until after the close of business on Monday, June 25, 2012, three business days before the depositions were to occur.  Defendants scrambled to make counsel available for the four depositions in four different states, only to have Branhaven cancel all four depositions the night before without explanation, after Defendants had incurred expenses to get counsel in various jurisdictions up to speed.

- At 9:40 pm on Friday, July 20, 2012, after its own self-imposed deadline for document production had elapsed and just three business days before the scheduled deposition of Branhaven's corporate designee, Branhaven sent to Defendants what was purported to be

approximately 27,000 pages of documents. When Defendants' counsel's litigation support team was able to access Branhaven's production on the morning of Monday, July 23, 2012, it was discovered that Branhaven's production included an as-yet-undetermined number of non-Bates-numbered files, including Excel spreadsheets and Microsoft Word documents, attached to the Bates-numbered PDF files. And, Defendants discovered that Branhaven obscured and rendered unviewable and unsearchable the text of certain files that Branhaven did Bates number because it had placed the Bates number and confidentiality endorsements over top of native document content. In order to allow Defendants' counsel to review this production, its litigation support team immediately began the time- and labor-intensive process of adding custom Bates numbers to the unnumbered files and performing OCR text recognition to make the documents searchable (where possible), at considerable expense to Defendants. After a full day of work on Branhaven's deficient production, Defendants' litigation support team concluded that the production actually contained a total of ***112,106 pages.***

When taken together, these abuses reveal a pattern of deception and disregard for the time and resources of Defendants and the Court. Defendants are start-up companies attempting to obtain funding to operate their businesses, and every additional delay or harassing tactic from Branhaven is causing real and immediate harm to Defendants.

## FACTUAL BACKGROUND

This is a simple declaratory judgment action regarding the validity and enforceability of certain agreements between Defendants and MetaMorphix, Inc. ("MMI"). Defendants entered into several agreements with MMI in 2009 and 2010 regarding the licensing and distribution of certain of MMI's intellectual property and technology regarding genomic testing of cattle. Shortly thereafter, MMI entered bankruptcy, and its agreements with Defendants and the applicable intellectual property were assumed out of bankruptcy by plaintiff Branhaven. In August 2011, Branhaven filed suit against Defendants, seeking a declaratory judgment that Defendants' agreements with MMI (the agreements Branhaven itself had assumed out of bankruptcy) were never meant to be valid or enforceable and therefore Defendants lacked authority to possess certain intellectual property it had obtained from MMI pursuant to those agreements.

Defendants have attempted to cooperate with Branhaven for many months despite Branhaven's continued harassment and dilatory tactics. Even before discovery, Branhaven engaged in deceptive behavior. In December 2011, during mediation with Magistrate Judge Stephanie Gallagher, Branhaven originally promised a business meeting (without lawyers) between the parties within two weeks. Defendants provided availability within 48 hours of the mediation, but it took Branhaven two-and-a-half months to schedule it. When the meeting finally took place on February 21, 2012, Defendants' business representatives flew to Chicago and were ambushed by a third-party's lawyer who pressured Defendants to take legal positions in absence of counsel and offered no business solutions.

### A.  Branhaven's Delays in Producing Documents and Scheduling Depositions

Discovery in this case began in January 2012; at that time, it was scheduled to close on May 7, 2012. Defendants issued discovery requests – interrogatories and requests for the production of documents – on January 30, 2012, and Branhaven provided signed, written responses to Defendants' requests for production on March 16, 2012. Defendants issued Rule 30(b)(6) deposition notices to Branhaven and third-party defendant Scidera, Inc. (also represented by Branhaven's counsel) on March 5, 2012. Branhaven issued deposition notices on Defendants' witnesses six weeks later, on April 20, 2012.

Defendants' counsel sent Branhaven's counsel a draft protective order to govern the production of documents on February 7, 2012 but, due in part to the stalling of Branhaven's counsel, the protective order was not executed until June 1, 2012. During the protracted negotiations regarding the protective order, the parties stipulated to extend the discovery deadline to July 2, 2012. Defendants met their discovery obligations and made their production

of documents – approximately 4,300 pages worth – on a rolling basis between June 6 and June 22, 2012.

By contrast, until last Friday's "document dump," Branhaven's document production had come in a trickle:

- On June 14, 2012, Branhaven produced 17 unique documents, two duplicates of documents appearing elsewhere in the production, and one blank page (Bates labeled BRANHAVEN 0033 and stamped CONFIDENTIAL), for a total of 46 pages.

- Branhaven produced an additional 93 pages of documents on June 18, six pages of which were duplicates of documents in their first production, and 68 pages of which were a single agreement (of limited relevance to the litigation) and its extensions.

On June 22, 2012, at the deposition of a non-party witness, Branhaven's counsel informed Defendants' counsel that Branhaven had "discovered" an additional box of documents which they claimed had been "mislabeled." Branhaven's counsel promised to review the box of documents promptly, but as of Friday, June 29, 2012, with discovery set to close on the following Monday, July 2, Branhaven had not produced any documents from this "surprise" box of documents and had not given any indication of when it intended to do so. In addition, during that time, Branhaven's counsel informed Defendants' counsel of other "surprise" discoveries of documents, including two laptop computers.

Further, Defendants had over the course of several months asked Branhaven's counsel to provide dates on which Defendants could depose the corporate designees of Branhaven and Scidera. Defendants' counsel stressed the importance of receiving Branhaven's documents in a timely fashion, so those documents could be reviewed in anticipation of the depositions of Branhaven's and Scidera's witnesses. Branhaven's counsel ignored these requests, and instead, demanded that Defendants' counsel provide dates on which *their* witnesses could be deposed,

despite the fact that Defendants issued deposition notices six weeks before Branhaven issued theirs. Frustrated with Branhaven's refusal to commit to a date on which it would complete its document production, and its refusal to provide dates on which its witnesses could be deposed, Defendants served a motion to compel on Branhaven on June 29, 2012.

To escape the looming discovery deadline and moot Defendants' pending motion to compel, Branhaven consented to complete its document production by July 13, 2012; the parties jointly filed a Status Report to that effect with the Court on July 2, 2012. (Doc. No. 50). Branhaven ultimately produced documents from the "mislabeled" box of documents on July 5, 2012, two weeks after initially bringing it to Defendants' counsel's attention. This production consisted of an additional 249 pages of documents, bringing Branhaven's total document production at that point to 388 pages.

On July 10, 2012, however, when Defendants drafted and circulated to Branhaven's counsel a joint stipulation to effectuate the scheduling order extension agreed to in the Joint Status Report, Branhaven's counsel informed Defendants' counsel that it would not complete its document production by July 13, and requested that the deadline in the stipulation be moved to July 20. Defendants objected, not wanting to delay depositions further and a discovery deadline that had already been moved twice but, in light of Defendants' obligations to be cooperative and civil in the planning and conducting of discovery as specified in the Discovery Guidelines, Defendants' acquiesced to Branhaven's request for more time. As part of the stipulation, the parties further agreed that Defendants' counsel would take the deposition of Branhaven's corporate designee, Christopher Paxos, on a date between July 25 and 27, 2012, three to five business days after Branhaven's self-imposed production deadline.

### B.    Branhaven's "Document Dump"

On the afternoon of July 20, 2012, Branhaven's counsel called Defendants' counsel and stated that it had a "substantial" document production and asked Defendants' counsel to set up a file transfer protocol ("FTP") site to facilitate Branhaven's production.  A departure from standard practice, Defendants agreed to help Branhaven achieve its production deadline.  When producing electronic documents in this manner, the producing party typically hosts its own FTP site, posts its data to that FTP site and provides credentials to the discovering party to download the electronic data at its leisure, thereby removing any dependence on an adversary to complete production.  (*See* Affidavit of James O'Neill, attached as Exhibit A, ¶ 4.)  Nonetheless, in the interest of cooperation, Defendants' counsel engaged its litigation support team to create an FTP site and grant access to Branhaven's counsel.  (*Id.*)  Much to Defendants' chagrin, however, they quickly learned that Branhaven's counsel, whose idea it was to use FTP to transmit its electronic production of documents, did not possess internally the expertise to use this technology effectively.  Thus, Defendants' counsel, upon request, made its litigation support analyst, James O'Neill, available by telephone and email to Branhaven's counsel to provide technical support, despite it being after business hours on a Friday night.

At 9:40 p.m. on Friday, July 20, 2012, Branhaven's counsel completed its document production with what purported to be approximately 27,000 pages of additional documents.  Defendants were shocked because Branhaven's after-hours production amounted to nearly a 7,000% increase in their production – without warning. Upon examining Branhaven's "document dump," however, Mr. O'Neill discovered additional problems.

First, Branhaven produced its electronic data as portfolios of documents created with Adobe software, instead of producing individual, document level .tiff images.  (O'Neill Aff. ¶

10). While not an error *per se*, Branhaven's use of Adobe to produce documents is uncommon and a more cumbersome means of formatting data for electronic production than using .tiff images. (*Id.*). In addition, Branhaven did not transfer the data with a file that provided an index or inventory of the contents of the production. (*Id.*). Typically, electronic document productions include a document production "load file" that contains such standard information as BegProd (beginning production number) and EndProd (ending production number) and an "image file," which automatically executes and organizes the contents of the production. (*Id.*). Without load and image files to use as a guide, Defendants had to deconstruct the electronic data portfolios that Branhaven transferred into the lowest document level files possible to ascertain the complete universe of data transferred and begin the process of formatting it for review. (*Id.*). This revealed the second error in Branhaven's production.

Second, and more egregiously, not all of the electronic documents that Branhaven's counsel produced were Bates-labeled. (O'Neill Aff. ¶ 11). Branhaven's counsel only applied Bates numbers to "parent" e-mails and stand alone electronic documents. (*Id.*). Electronic documents that were attached to "parent" e-mails were not Bates numbered. (*Id.*). Consequently, the approximately 27,000 pages of content transferred was substantially understated. (*Id.*). To ascertain the total size of Branhaven's document production, Defendants had to electronically pull apart and separate the transferred data into individual files, and then had to organize the files to determine which were attachments to "parent" e-mail files and which were stand alone files. (*Id.*). Defendants had to develop a numbering system that would enable them to identify the non-Bates-labeled documents as attached files in proper sequence with the parent e-mail without disrupting the production Bates numbers that Branhaven utilized. (O'Neill Aff. ¶ 11). After a full day of work, Defendants' litigation support team determined that the

Branhaven "document dump" actually consisted of **112,106 pages.** Accordingly, Branhaven's last-minute "document dump," issued seven months after receiving Defendants' document requests and after Branhaven's own self-imposed production deadline, consists of **99.7%** of all the documents it has produced.

When Defendants' counsel confronted Branhaven's counsel regarding the document dump and its deficiencies, Branhaven's counsel explained that the production was the result of Branhaven's search of four-and-a-half years of its own e-mail servers. Branhaven's counsel did not explain why it waited until July 2012 to search its own document servers for documents responsive to requests received seven months earlier.

Only two business days remain before the deposition of Branhaven's corporate designee on Thursday, July 26, and it is impossible to review all the documents in the "document dump" by that time. Defendants were hoping to search the production for documents relevant to the deposition, but after nearly two days of conversion work by Defendants' counsel's litigation support team, the production is not yet fully searchable. Regardless, given the already extensive delays in this litigation, Defendants are uninterested in delaying matters further by rescheduling depositions and intend to depose Branhaven's and Scidera's witness this Thursday.

      **C.**     **Branhaven's Harassing and Unreasonable Rule 45 Subpoenas**

On June 21, 2012, Branhaven issued four Rule 45 subpoenas for the depositions of four non-party witnesses, each a former board member of MMI, the company whose assets Branhaven acquired out of bankruptcy in 2011. The subpoenas scheduled all four depositions for Friday, June 29, 2012 at 9:00 a.m., in four different states – Howard Minigh in Totowa, New Jersey; John Block in Washington, D.C.; Edward Shonsey in San Diego, California; and Dr. Clifton Baile in Athens, Georgia. At no time before or after the issuance of the subpoenas did

Branhaven's counsel confer with Defendants' counsel about availability, let alone whether they were able to provide counsel in four different states simultaneously.

Branhaven's counsel did not provide Defendants with copies of the subpoenas on June 21. Even though Branhaven's counsel attended a deposition the next day where she sat across the table from Defendants' counsel, Branhaven's counsel did not mention the non-party depositions scheduled for June 29 and did not give Defendants' counsel copies of the subpoenas. Instead, Branhaven's counsel belatedly sent Defendants' counsel copies of the subpoenas at the close of business on Monday, June 25, such that Defendants' counsel had only three business days within which to locate counsel in four different jurisdictions and get counsel up to speed on the litigation. Defendants' counsel expressed its objections to the subpoenas but, in the interest of cooperation, set about locating counsel to attend the four depositions.

On Thursday, June 28, less than 24 hours before the depositions were scheduled to take place, Branhaven's counsel canceled all four depositions without explanation.

## ARGUMENT

### I. Branhaven's Last-Minute "Document Dump" Violates Federal Rule 26(g)

Branhaven's repeated abuses of the discovery process are unreasonable, unduly burdensome and expensive, have caused unnecessary delay, and needlessly have increased the costs of litigation. In particular, Branhaven's multiple delays in producing documents and its ultimate 100,000+ page "document dump" are abuses for which Defendants are entitled to sanctions against Branhaven under Federal Rule 26(g)(3). Rule 26(g) states that, by signing responses to discovery requests, an attorney or party certifies that such responses (including the production of documents) are:

>       (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
>       (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at state in the action.

Fed. R. Civ. P. 26(g)(1)(B). The Rule also states that such certification is made "to the best of the person's knowledge, information, and belief ***formed after a reasonable inquiry***." Fed. R. Civ. P. 26(g)(1) (emphasis added). In addition, Rule 26(g)(3) provides that:

>       If a certification violates this rule without substantial justification, the court, on motion or on its own, ***must*** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3) (emphasis added).[1]

---

[1] Branhaven's counsel signed its responses to Defendants' requests for production on May 16, 2012, thereby effectuating a certification under Rule 26(g)(1). To the extent Branhaven may argue that Rule 26(g) applies only to written discovery responses, and not to document production, this position runs contrary to the spirit of the Rule and is not supported by case law. To the contrary, courts regularly find violations of Rule 26(g) in relation to document productions. *See, e.g.*, *Legault v. Zambarano*, 105 F.3d 24, 28 (1st Cir. 1997) (finding that trial court did not abuse its discretion by imposing Rule 26(g) sanctions on party that failed to produce four categories of documents, and noting that the advisory committee notes to Rule 26 made clear that "a certifying lawyer must make 'a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand'"); *Lillie v. United States*, 40 F.3d 1105, 1110 (10th Cir. 1994) (upholding trial court's finding of a violation of Rule 26(g) where the government failed to produce documents responsive to a particular request); *Smith v. Life Inv. Ins. Co. of Am.*, 2009 WL 2045197, at *5 (W.D. Pa. July 9, 2009) (stating that "the discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents," and citing Rule 26(g)); *Logan v. Gary Cmty. School Corp.*, 2008 WL 5062802, at *3 (N.D. Ind. Nov. 21, 2008) (holding, under Rule 26(g), that defendants' document production "violates the Federal Rules of Civil Procedure and demonstrates a lack of good faith effort to locate and produce documents"); *Jankins v. TDC Mgmt. Corp., Inc.*, 131 F.R.D. 629, 634 (D.D.C. 1989) ("A party's failure to produce responsive documents and information during

Judge Grimm has stated that Rule 26(g) "is intended to impose an 'affirmative duty' on counsel to behave responsibly during discovery, and to ensure that it is conducted in a way that is consistent 'with the spirit and purposes' of the discovery rules." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (holding that boilerplate objections to discovery requests could be considered a failure to make a "reasonable inquiry," and therefore a violation of Rule 26(g)). Judge Grimm noted that, according to the Advisory Committee's Notes to Rule 26(g):

> . . . Rule 26(g) is *designed to curb discovery abuse* by explicitly encouraging the imposition of sanctions. The subdivision provides a *deterrent* to both **excessive discovery** and **evasion** by imposing a certification requirement that obliges each attorney to *stop and think about the legitimacy of a discovery request, a response thereto, or an objection* . . . .

*Id.* (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments) (italics in original, bold emphasis added).

The standard for whether an attorney or party has made a "reasonable inquiry" for purposes of Rule 26(g) is whether the attorney or party has made "a reasonable effort to assure that the client has provided all the information and documents **responsive to the discovery demand**." *Poole v. Textron, Inc.*, 192 F.R.D. 494, 503 (D. Md. 2000) (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments) (emphasis added).

Branhaven's discovery efforts have been anything but reasonable. Branhaven, as the party who originally filed suit nearly a year ago in August 2011, is presumed to know the bases for its claims against Defendants, and the documents supporting and/or concerning those claims. Even if this were not the case, Branhaven has been on notice for **seven months** of the categories

---

the course of discovery constitutes grounds for the imposition of sanctions under Fed. R. Civ. P. 26(g).").

of documents sought by Defendants, as Defendants' requests for production were served on Branhaven in January 2012. It is wholly unreasonable for Branhaven to suggest that, for the ten months between Branhaven's filing suit and its surprise "discovery" of additional documents, Branhaven was only aware of 388 pages of documents relevant to this dispute. Branhaven's subsequent "discovery" and "document dump" of over 100,000 pages of additional documents indicates a failure of Branhaven to take its discovery obligations seriously and to make a "reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand." *Poole*, 192 F.R.D. at 503. Even more egregiously, Branhaven's counsel's admission that the document dump was the result of an eleventh-hour search of four-and-a-half years of Branhaven's own e-mail servers demonstrates Branhaven's utter lack of effort in reviewing documents in a timely and efficient manner.

Several courts have taken parties to task for such impermissible "document dumps." *See, e.g.*, *Plan Pros, Inc. v. Torczon*, 2009 WL 3063017, at *4 (D.Neb. Sept. 18, 2009) (holding that producing party's "'7800 page document dump' does not satisfy their obligations under Rules 26, 33 and 34 to conduct a reasonable inquiry and fully respond to" discovery requests); *John W. Daniel & Co, Inc. v. Durham Public Schools Bd. of Educ.*, 2008 WL 2781164, at *1 (M.D.N.C. Mar. 7, 2008) (stating that "Defendants complain, in essence, that they have been the victim of a 'document dump' and I agree" and that "should a court permit such a document dump, 'discovery would be thwarted at every turn'"); *Felman Production, Inc. v. Indus. Risk Insurers*, 2011 WL 4547012 at *3 (S.D.W.Va. Sept. 29, 2011) (imposing sanctions upon a party in part for that party's production of over a million pages of documents, of which "approximately thirty to forty percent were completely irrelevant to this case").

Further, Branhaven's last-minute "document dump" was in a form that has necessitated additional time and expense from Defendants to make use of it. The documents came in the form of approximately one gigabyte of unsearchable PDF files, including numerous pages that lacked Bates labels and others were content has been obscured by inappropriately placed endorsements. *See* O'Neill Aff. ¶¶ 9-12. Branhaven's failure to produce documents in a usable format is contrary to standard discovery practice, in which "the presumption is that the producing party should bear the cost of responding to properly initiated discovery requests." *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 575 (D. Md. 2010) (quoting *Thompson v. U.S. Dept. of Housing & Urban Dev.*, 219 F.R.D. 93, 97 (D. Md. 2003)).

Branhaven's actions are impermissible and unreasonable and should be sanctioned.

## II.     Branhaven's Discovery Abuses Violate the District of Maryland's Discovery Guidelines

This Court has enacted Discovery Guidelines in order to "facilitate the just, speedy, and inexpensive conduct of discovery." Guideline 1(a).[2] Branhaven's excessive delaying and harassing tactics have resulted in discovery that has dragged on, increasing the cost of litigation and preventing Defendants from properly operating their businesses.

Defendants spent several months unsuccesfully attempting to get Branhaven to commit to a date by which it would produce documents. As this Court has stated, a discovery response promising to produce documents but without committing to a date of production is tantamount to failing to respond at all. *See, e.g.*, *Mezu*, 269 F.R.D. at 574 ("It is improper to state, as Defendant did, that production will be made at some unspecified time in the future."); *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 656 (D.Md. 1997) ("[A] response to a

---

[2] The Discovery Guidelines are appended as Appendix A to the Local Rules of the United States District Court for the District of Maryland.

request for production which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, . . . is treated as a failure to answer or respond.").

After the execution of the Protective Order between the parties, Defendants repeatedly conferred with Branhaven in an attempt to learn when Branhaven intended to produce documents. Branhaven produced no documents at all until June 14, 2012. Between June 14 and July 19, 2012, Branhaven produced only 388 pages of documents. Many of those documents were wholly irrelevant to this case – documents produced included a settlement term sheet from an entirely unrelated litigation, several blank pages, and documents with apparently missing pages. Even after Branhaven's alleged "discovery" of boxes and laptops of surprise documents, Branhaven's counsel would not commit to a date by which to complete its document production. It was only with a discovery deadline looming, and after Defendants filed a motion to compel, that Branhaven agreed to complete its document production by July 13, 2012, a deadline it failed to keep.

Branhaven's delay until July 2, 2012 to request an extension of the discovery deadline ending on that day violates the Discovery Guideline that a party seeking additional time should make such a request "not later than three (3) days" before a deadline. Guideline 9(a). Indeed, Branhaven has conducted discovery in a near-total state of secrecy. Branhaven's counsel sat on Rule 45 subpoenas for four days without sending copies to Defendants' counsel; Branhaven's discoveries of "surprise" documents were communicated to Defendants' counsel with minimal details or explanations; and Branhaven's reports that it will not meet agreed-upon deadlines consistently come at the last minute. This is contrary to the Guidelines' guidance that counsel "confer early and throughout the case" in order to "make adjustments and modifications in

discovery as needed."  Guideline 1(a); *see also* Guideline 1(d) ("Cooperation and civility include, at a minimum, being open to, and reasonably available for, discussion of legitimate differences in order to achieve the just, speedy, and inexpensive resolution of the action and every proceeding.").

Throughout this litigation, Defendants have consistently acquiesced to Branhaven's discovery demands in the interest of moving the case forward to a ruling on the merits. Defendants have taken seriously their obligation to "communicate with [Branhaven] in good faith throughout the discovery process to resolve disputes without the need for intervention by the Court."  Guideline 1(f).  As the saying goes, however, "no good deed goes unpunished." Branhaven's tactics have delayed the close of discovery by several months, and it is attempting to do so again by a last-minute production of what amounts to 99.7% of all documents it has produced in this case.  Defendants can stand for no more.

### III.    Defendants' Requested Sanctions Are Appropriate

This Court has inherent authority to issue sanctions for discovery abuses.  This authority stems in part from "the court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct which abuses the judicial process."  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010) (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505 (D. Md. 2009) (internal quotation marks omitted)).  This authority arises "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." *Id.* (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).  Undergirding this authority "is the need to preserve the integrity of the judicial process in order to retain

confidence that the process works to uncover the truth." *Id.* (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010)).

Included in the Court's inherent authority to sanction parties who abuse the discovery process are its authority to "prohibit[ ] the disobedient party from . . . introducing designated matters into evidence" and order that "the party is not allowed to use . . . information" it failed to disclose. Fed. R. Civ. P. 37(b)(2)(A)(ii), (c)(1). Here, Branhaven's lack of a reasonable inquiry or effort regarding its document production obligations, and its last-minute "document dump" is tantamount to a failure to disclose. Accordingly, it is appropriate for the Court to issue sanctions against Branhaven for its abuses and order that Branhaven not be allowed to use any information contained within its "document dump," with the caveat that Defendants will be able to use anything they find within the production that supports their case.

Further, Rule 26(g)(3) provides that, where a party has certified through signed discovery responses that it does not intend to use discovery to harass, cause unnecessary delay, or needlessly increase the cost of litigation but nevertheless does exactly that, an appropriate sanction is "an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Defendants have incurred significant legal fees and expenses in counteracting Branhaven's harassing and dilatory discovery tactics. Regarding the "document dump" itself, Defendants' counsel's litigation support team worked for a full day simply getting Branhaven's deficient production into a usable format. Defendants are therefore entitled to recover their attorneys' fees and expenses related to Branhaven's discovery abuses.

## IV.   Expedited Treatment of this Motion is Appropriate

Branhaven's tactics have resulted in excessive delay in this litigation. While in some other cases, a plaintiff's own failure to efficiently prosecute his case may be of little concern to a

defendant, here every day of delay is increasingly harmful to Defendants' businesses. Defendants are start-up companies that were organized for the purpose of making use of the technologies and processes at issue in the litigation. Branhaven claims that Defendants lack the right to possess and use those technologies and processes, and while those rights are in question, Defendants are unable to seek funding or operate their businesses. In a sense, Branhaven's dilatory tactics are waging a war of attrition on Defendants.

The Discovery Guidelines provide that, "[i]f the Court determines that the [discovery] issue is too complicated to resolve informally, it may set an expedited briefing schedule to ensure that the dispute can be resolved promptly." Guideline 1(g). Defendants respectfully request that the Court set such an expedited briefing schedule with regard to this dispute. This is not a motion to compel – Branhaven's actions have already had their desired effects, and Defendants seek only that Branhaven be sanctioned to deter it from engaging in harassing and dilatory tactics in the future, and ask that Branhaven not be rewarded for those tactics through the ability to make use of documents dumped on Defendants at the last minute.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court issue sanctions against Branhaven for discovery abuse, issue an Order prohibiting Branhaven from using any documents in its last-minute "document dump," and award Defendants reasonable attorneys' fees and costs related to Branhaven's discovery abuses and violations.

Respectfully submitted,

By:   /s/
Hugh J. Marbury (Bar No. 24653)
T. Brendan Kennedy (Bar No. 16142)
Benjamin D. Schuman (Bar No. 28829)
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, MD  21209-3600
Telephone:     410.580.3000
Facsimile:     410.580.3001

*Attorneys for Defendants.*