IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANHAVEN, LLC,<br><br>    Plaintiff and Counter-Defendant,<br><br>vs.<br><br>BEEFTEK, INC., BT SELECTION, LLC and PRIMEBEEFMARKER, LLC<br><br>    Defendants and Counter-Plaintiffs<br><br>vs.<br><br>SCIDERA, INC.<br><br>    Third-Party Defendant. | Civil Action No.: 1:11-cv-02334-WDQ<br><br>**AFFIDAVIT** |

James O'Neill, being duly sworn, states as follows:

1. I am making this statement based upon personal knowledge, and I am competent to testify to the information herein.

2. I am a Litigation Support Analyst with DLA Piper LLP ("DLA Piper" or the "Firm"), a position I have held since June 26, 2006. Prior to joining DLA Piper, I held a variety of litigation support, systems analyst and project management positions with companies that provide information management and technology services to the legal industry over the course of my career, which began in 1989.

3. I hold a B.S. in Management from Saint Vincent College, and I hold certificates in, and I am experienced using, the following litigation software programs: CaseSoft; Concordance; DB TextWorks; DocuLex; IPRO; LAW PreDiscovery Software, including LAW PreDiscovery Admin and EDD certificates; LiveNote; Lotus Notes; Opticon; Relativity; Sanction; and Summation.

4. On the afternoon of July 20, 2012, DLA Piper lawyers informed me that counsel to Branhaven, LLC ("Branhaven") had requested that the Firm prepare a secure site to which Branhaven's counsel could upload what was reported to be a "substantial" production of electronic documents using file transfer protocol ("FTP"), and the DLA Piper lawyers asked for my assistance. Branhaven's request struck me as odd, because in my experience the producing party typically hosts its own FTP site for use in transferring its client's own electronic data. That is, the producing party prepares a secure FTP site to which it uploads electronic data and from which the receiving party may download the data using credentials provided by the producing party. Here, however, Branhaven's counsel asked that DLA Piper host the FTP site and provide Branhaven's counsel with credentials that it could use to upload its electronic production of documents to a site it did not host. This arrangement shifts certain costs to, and imposes obligations on, DLA Piper that it would not incur in the typical case.

5. Although uncommon, DLA Piper agreed to prepare and host a secure FTP site to which Branhaven's counsel could upload its production of documents. After preparing the FTP site, at approximately 6:45 p.m. on July 20, 2012, DLA Piper lawyers provided to Branhaven's counsel credentials that enabled Branhaven's counsel to upload the anticipated electronic document production.

6. Approximately an hour and a half later, at 8:17 p.m., Branhaven's counsel advised that it was experiencing "difficulty uploading" its electronic production of documents to the FTP site that DLA Piper had prepared. Branhaven's counsel asked the DLA Piper lawyers if the individual handling the transmission of electronic data for Branhaven could contact directly the Firm's information technology professionals for assistance. Ten minutes later, with the approval

of the DLA Piper lawyers handling this case, I provided my e-mail and telephone number to Branhaven's counsel so that they may reach me if my help was needed.

7. Minutes later, I received a telephone call from Mr. Dapo Lawal, whom I understand is a paralegal working with Branhaven's counsel. I spent approximately 15 minutes on the telephone with Mr. Lawal, providing technical assistance and walking him through the steps necessary for him to upload the electronic documents using FTP. That telephone conversation ended at approximately 8:43 p.m.

8. Nearly an hour later, at 9:40 p.m. on July 20, 2012, Mr. Lawal sent an e-mail confirming that Branhaven had successfully uploaded to the DLA Piper FTP site a production file labeled "Branhaven 0389-027016."

9. As this file name suggests, the data that Branhaven's counsel transferred contained approximately 27,000 pages of Bates-labeled documents, starting with a document Bates-numbered Branhaven0389 and ending with a document Bates-numbered Branhaven027016. This Bates-numbered page range comprised 5,947 electronic documents, including electronic correspondence ("e-mail") and miscellaneous attached and stand alone files of various file types and formats such as Excel spreadsheets, MS Word documents and scanned images of documents, among others. Upon closer inspection of the electronic data that Branhaven's counsel transferred, however, I observed the following production errors.

10. First, Branhaven produced its electronic data as portfolios of documents created with Adobe software, instead of producing individual, document level .tiff images. While not an error, per se, Branhaven's use of Adobe is by no means common and is certainly a more cumbersome means of formatting data for electronic production than using .tiff images. Moreover, Branhaven did not transfer the data with a file that provided an index or inventory of

the contents of the production. Typically, electronic document productions include a document production "load file" that contains such standard information as BegProd (beginning production number) and EndProd (ending production number) and an "image file," which automatically executes and organizes the contents of the production so that it may be electronically reviewed. Without load and image files to use as a guide, I had to deconstruct the electronic data portfolios that Branhaven transferred into the lowest, document level files possible to ascertain the complete universe of data transferred and begin the process of formatting it for review by the DLA Piper lawyers. This revealed the second error in Branhaven's production.

11.     Second, not all of the electronic documents that Branhaven's counsel produced were Bates-labeled. Branhaven's counsel only applied Bates numbers to "parent" e-mails and stand alone electronic documents. Electronic documents that were attached to "parent" e-mails were not Bates numbered. Consequently, the approximately 27,000 pages of content transferred was understated. To ascertain the total size of Branhaven's document production, after I electronically pulled apart and separated the transferred data into individual files, I then had to review and organize the files to determine which were attachments to "parent" e-mail files and which were stand alone files. I then had to develop a numbering system that would enable us to identify the non-Bates-labeled documents as attached files in proper sequence with the parent e-mail without disrupting the production Bates numbers that Branhaven utilized. When finished, we determined that Branhaven actually produced 112,106 pages of documents.

12.     Third, in the process of sequencing and renumbering the electronic data, I discovered that, on the documents that Branhaven's counsel did Bates number, it applied the Bates number and/or confidentiality designation directly over top of document content, obscuring portions of documents from view and rendering the affected content incapable of electronic word searching.

Typically, Bates numbers and confidentiality endorsements are applied to documents in a dedicated channel that is located in the margin of the document, so that the document contents are fully visible. The Adobe software that Branhaven's counsel used to prepare its electronic document production permits the use of channels to locate endorsements in appropriate places on documents, but Branhaven's counsel did not use this function. As a consequence, there are portions of the documents that DLA Piper lawyers can neither see nor search electronically.

13.  The process of reformatting Branhaven's document production took approximately twenty (20) hours of machine time and five and a half (5.50) hours of my professional time.

14.  I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 24, 2012

_____
James O'Neill