IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANHAVEN, LLC, <br><br> Plaintiff and Counter-Defendant, <br><br> vs. <br><br> BEEFTEK, INC., BT SELECTION, LLC and PRIMEBEEFMARKER, LLC <br><br> Defendants and Counter-Plaintiffs <br><br> vs. <br><br> SCIDERA, INC. <br><br> Third-Party Defendant. | Civil Action No.: 1:11-cv-02334-WDQ |

## LOCAL RULE 104.7 CERTIFICATION

Pursuant to Local Rule 104.7 and in support of Defendants' Motion for Sanctions, I, Hugh J. Marbury, certify that Defendants' counsel conferred with Branhaven's counsel throughout discovery in a sincere attempt to resolve the differences between them.

1.   I am counsel in this litigation to Defendants BeefTek, Inc., BT Selection, LLC, and PrimeBeefMarker, LLC (collectively, "Defendants").

2.   On June 1, 2012, I emailed Branhaven's counsel Steven Leitess to state that we were getting the protective order signed by our clients that evening, and asked Mr. Leitess to "get me deposition availability for your clients and I will get mine." Mr. Leitess did not respond.

3.   On June 7, 2012, I emailed Mr. Leitess informing him of our first document production and stating, "Please get me availability of your witnesses and let me know when we will receive your documents. We only have three weeks and we can't

take depositions until you produce your documents." I also informed Mr. Leitess that we intended to take the non-party deposition of Edwin Quattlebaum. Mr. Leitess did not respond.

4. On June 11, 2012, I emailed Mr. Leitess and his colleague Jennifer Lubinski and stated, "We have exactly 14 days left in the discovery period and we have not received a single document from your clients. You also haven't responded to my multiple requests for deposition dates for your clients. Please respond ASAP so that we don't have to involve the Court."

5. On June 11, 2012, Mr. Leitess responded, saying only, "Understood. We're working on it. I was in court in Philadelphia today. I'll let you know as soon as I have a delivery date."

6. On June 14, 2012, Mr. Leitess called me from the Maryland Bar Convention in Ocean City to let me know to expect a production from Branhaven. That evening, Branhaven produced 46 pages of documents.

7. I emailed Mr. Leitess on June 15, 2012 regarding his document production, and reminded Mr. Leitess, "You also have not provided any dates for the deposition of your clients that I noticed months ago. I see no possibility that we can complete discovery before the July cutoff." In that email, I again informed Mr. Leitess that we intended to take the deposition of Dr. Quattlebaum before the July 2 cutoff. Again, Mr. Leitess did not respond, and never responded in any way to emails regarding the deposition of Dr. Quattlebaum.

8. On June 18, 2012, I emailed Mr. Leitess and Ms. Lubinski and informed them that we had scheduled Dr. Quattlebaum's deposition for June 22, 2012. I stated,

"We had hoped that we would be able to get your document production before the deposition, but we have run out of time. . . . Still waiting for deposition dates from your clients, but I suspect we are running out of time."

9. On June 21, 2012, Mr. Leitess sent me a letter asking for deposition dates for Defendants' witnesses, and complaining about Defendants' discovery responses and document production.

10. After Dr. Quattlebaum's deposition on June 22, 2012, I had a conversation with Ms. Lubinski, and reiterated that (a) we had filed our notices of deposition six weeks before Branhaven filed theirs, and therefore would not agree to depositions of Defendants' witnesses prior to the depositions of Branhaven's witnesses; and (b) we still had no commitment from Branhaven as to when it would complete its document production. During that meeting, Ms. Lubinski informed me that Branhaven had "found" a box of documents that had been "mislabeled," and promised to review and produce any responsive documents from that box "promptly."

11. On June 25, 2012, in addition to serving Defendants with copies of four Rule 45 subpoenas for depositions in four different states to take place concurrently on June 29, Mr. Leitess sent me a letter reiterating my conversation with Ms. Lubinski, and stating that Branhaven's delay in producing documents was "not a proper basis for you to refuse to produce witnesses for deposition." In this letter, Mr. Leitess stated a unilateral intention to take the depositions of Defendants' witnesses Michael Cohen, John Lamar, and Tom Hogan on Monday, July 2, 2012. Mr. Leitess again did not provide any dates on which his own witnesses could be deposed.

12. On June 26, 2012, I sent a letter to Mr. Leitess in response to his June 21, 2012 letter, and stated as follows:

> Regarding your request for deposition dates for our clients and their principals, please recall that we have repeatedly requested dates from you for the depositions of your clients' designees over the last month and you have never responded. As I said to you in an e-mail on June 7, 2012, we cannot take depositions until you produce your documents. We completed our document production on Friday, when we sent the fourth CD of responsive documents to your attention. To date, we have received only 139 pages of documents from you, which includes duplicates, blank pages, and partial documents. At the end of Dr. Quattlebaum's deposition on Friday, we learned for the first time that your client had recently "discovered" an entire box of potentially responsive documents. When asked, your colleague, Ms. Lubinski, refused to commit to a date certain by which your document production will be complete. It is impossible to schedule any further depositions until we know when your document production will be complete.

13. On June 27, 2012, I sent a letter to Mr. Leitess objecting to the four Rule 45 non-party subpoenas he issued on June 21 and served to us on June 25, for depositions in four different states on June 29. In the letter, I objected to his waiting four days before sending us the subpoenas, and called Mr. Leitess's attention to Federal Rule 30(b)(1) and Discovery Guideline 9(b), which require 14 days advance notice for depositions. Nonetheless, we agreed to attempt to provide counsel to attend the depositions.

14. Also on June 27, 2012, I sent another letter to Mr. Leitess responding to his June 25, 2012 letter. I informed Mr. Leitess that Defendants' witnesses were not available to be deposed on July 2, and reiterated our position on the scheduling of depositions, including the fact that Defendants' issued deposition notices on March 5, 2012, while Branhaven did not issue its until April 20, 2012, thereby making it nonsensical for Mr. Leitess to insist that Defendants make their witnesses available for

depositions while continuing to ignore Defendants' own requests for dates on which to depose Branhaven's witnesses.

15. On June 28, 2012, Mr. Leitess sent me a letter stating that Branhaven had discovered "additional, potentially responsive materials," including two laptop computers. Mr. Leitess stated that they intended to produce those materials, as well as materials in the "mislabeled" box Ms. Lubinski had mentioned on June 22, "within the next ten days." Further, in response to my statement that Defendants' witnesses were not available for Branhaven's unilateral demand that they be deposed on July 2, 2012, Mr. Leitess stated, "We intend to file a motion to compel as well as a motion to modify the scheduling order with the Court. I understand from your prior correspondence that you do not wish to confer about these matters."

16. Because Branhaven's counsel had repeatedly ignored my requests for deposition dates for their witnesses and my requests that they commit to date by which they would complete their document production, on June 29, 2012, we served Branhaven with a Motion to Compel, asking the Court to set a date by which Branhaven would complete its document production, and setting date ranges for depositions for both Branhaven's and Defendants' witnesses.

17. Branhaven responded by filing its own Motion to Compel several hours later.

18. I called Mr. Leitess on the afternoon of Monday, July 2, 2012 pursuant to Local Rule 104.8(b), in an attempt to resolve the discovery disputes in good faith. During that telephone call, we agreed on behalf of the parties that (i) Branhaven would complete its document production and produce all documents by the close of business on

Friday, July 13, 2012; (ii) Branhaven and Scidera would make its corporate designee(s) available for deposition between July 25 and 27, 2012; and (iii) Defendants' would make their witnesses available for deposition at mutually agreeable times between July 30 and August 3, 2012. We filed a Joint Status Report reflecting that agreement on July 2, 2012 (Doc. No. 50).

19. During that call on July 2, 2012, Mr. Leitess also represented to me that Branhaven would produce documents from the "mislabeled" box referred to by Ms. Lubinski on June 22, 2012, either later that afternoon or on Tuesday, July 3, 2012.

20. On July 5, 2012, I emailed Mr. Leitess to ask the status of the production of documents from the "mislabeled" box. Branhaven ultimately produced those documents, a total of 249 pages, by email at 7:13 p.m. on July 5, 2012.

21. On July 10, 2012, Judge Quarles' chambers contacted counsel and requested a stipulation requesting the extension of deadlines reflected in the Joint Status Report. We drafted a stipulation and sent it to Mr. Leitess for his approval.

22. That evening, Mr. Leitess responded that, despite his having agreed in the Joint Status Report that Branhaven would produce all documents by Friday, July 13, 2012, it would not do so, and requested that the deadline in the stipulation be changed to July 20, 2012.

23. I engaged in extensive email correspondence with Mr. Leitess on the evening of July 10, 2012, expressing our objections with additional delays in the deadlines to which he had agreed previously and requesting an explanation for those additional delays. Mr. Leitess declined to provide details, stating only that "[y]our dissatisfaction or incorrect assumptions about the process don't change the situation and

will not advance the matter." Mr. Leitess did not inform me at that time that it was preparing a monumental "document dump" culled from four-and-a-half years of e-mail servers that Branhaven did not bother to review until July 2012.

24. In order to avoid additional discovery disputes and not wishing to bother the Court, we agreed to change the deadline in the stipulation for Branhaven's document production to July 20, 2012, with a footnote explaining why the date in the stipulation was different from the date submitted a week earlier in the Joint Status Report. After some back-and-forth negotiation regarding the text of the footnote, we filed the stipulation on July 13, 2012.

25. On July 16, 2012, Mr. Leitess sent me a letter regarding deposition dates and stating that they expected to completely their document production by July 20, 2012.

26. At 9:40 p.m. on Friday, July 20, 2012, Branhaven produced what was ultimately revealed to be over 112,000 pages of documents, increasing its document production from the prior seven weeks by nearly 29,000%, as described in more detail in the Affidavit of James O'Neill attached to the Motion to Compel.

27. At 9:56 p.m. on Friday, July 20, 2012, I emailed Mr. Leitess to express our objection to their last-minute "document dump," saying that "[t]o say that this is unfair surprise is an understatement, especially since you have had our discovery requests for many months and have had Mayer Brown involved since January." Mr. Leitess did not respond to the email.

28. On Monday, July 23, 2012, I called Mr. Leitess to again express our objection to their last-minute "document dump." Mr. Leitess expressed ignorance regarding the technical deficiencies of the production, and stated that the production was

the result of a search of four-and-a-half years of e-mail servers. Mr. Leitess did not explain why Branhaven failed to search the e-mail servers until July 2012, seven months after the commencement of discovery.

The following issues require resolution by the Court:

- ➢ Sanctions for Branhaven's last-minute "document dump" of over 112,000 pages of documents and Branhaven's other harassing and dilatory tactics through the discovery process;

- ➢ Defendants' request for attorneys' fees and costs incurred as a result of Branhaven's discovery violations; and

- ➢ Defendants' request for an Order barring Branhaven from using any documents contained within its last-minute "document dump."

Respectfully submitted,

By: _____
Hugh J. Marbury (Bar No. 24653)
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, MD 21209-3600
Telephone:   410.580.3000
Facsimile:   410.580.3001

*Attorneys for Defendants.*