IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANHAVEN, LLC,<br><br>    Plaintiff and Counter-Defendant,<br><br>    vs.<br><br>BEEFTEK, INC., BT SELECTION, LLC and PRIMEBEEFMARKER, LLC<br><br>    Defendants and Counter-Plaintiffs<br><br>    vs.<br><br>SCIDERA, INC.<br><br>    Third-Party Defendant. | Civil Action No.: 1:11-cv-02334-WDQ |

**SUPPLEMENT TO DEFENDANTS' MOTION FOR SANCTIONS**

Defendants BeefTek, Inc., BT Selection, LLC and PrimeBeefMarker, LLC (collectively, "Defendants") hereby supplement their Motion for Sanctions ("Motion") against plaintiff Branhaven, LLC ("Branhaven") to include additional information learned since filing the Motion.

Defendants filed their Motion on Tuesday, July 24, 2012 (Doc. No. 54). On Thursday, July 26, 2012, Defendants took the deposition of Christopher Paxos, designated as a corporate designee pursuant to Federal Rule 30(b)(6) by both plaintiff Branhaven and third-party defendant Scidera, Inc. ("Scidera"). At that deposition, Defendants questioned Mr. Paxos regarding, *inter alia*, Branhaven and Scidera's efforts to comply with the discovery rules and put forth a reasonable effort and inquiry regarding the search for and production of documents responsive to

Defendants' document requests and, specifically, regarding the steps that led to Branhaven's technically problematic production of 112,000 pages of documents on Friday, July 20, 2012.

Mr. Paxos stated that the 112,000-page production came from the e-mail servers of MetaMorphix, Inc. ("MMI"). *See* Paxos Dep. at 227:18-23.[1] By way of background, Branhaven and Scidera assumed most or all of MMI's assets out of MMI's bankruptcy in 2011, including its e-mail servers, institutional knowledge, and many of its employees. Mr. Paxos testified, however, that Branhaven had been unable to perform a search of MMI's e-mail servers because, despite the fact that Branhaven had acquired those servers and the institutional knowledge regarding the servers, access to the servers required "passwords that nobody had." *See* Paxos Dep. at 228:14-19.

Mr. Paxos was unclear as to what efforts, if any, Branhaven and its counsel used to attempt to access the e-mail servers during the seven months between January 2012, when Branhaven first received Defendants' document requests, and July 2012, when it made the production of documents that triggered Defendants' Motion. What is clear is that Branhaven at no time during the discovery period informed the Defendants that it knew of potentially responsive documents within its possession, custody and control, which it was having difficulty accessing. It was not until July 2012, after the discovery deadline had been extended twice, that Branhaven finally engaged a litigation support vendor, Kroll, to assist it in accessing the servers. *See* Paxos Dep. at 229:9-20. Kroll ultimately was able to correct the password issue, resulting in the 112,000-page document dump produced by Branhaven on July 20, 2012. *See* Paxos Dep. at 230:10-18. Still, Branhaven's counsel did not communicate to Defendants' counsel that it had

---

[1] Relevant excerpts of the Paxos deposition are attached as Exhibit A.

encountered any difficulty regarding its document search or production, let alone forewarn the Defendants about the document dump after Branhaven had gained access to the servers and an understanding of the tremendous volume of documents it was about to produce.

Notwithstanding its silence concerning MMI's servers, Branhaven's counsel did inform Defendants' counsel in late June or early July 2012 that it had "found" two laptops containing potentially responsive documents. At Mr. Paxos' deposition, the following exchange occurred:

> Q. . . . At some point we were told that there were two laptops that were located.
>
> A. Correct.
>
> Q. Tell me about that. When did that happen?
>
> A. They were located probably –
>
> Q. In July?
>
> A. -- June-July time frame.
>
> Q. Where were they located?
>
> A. Here.
>
> Q. In this office?
>
> A. Yes.

Paxos Dep. at 232:22-233:10. No explanation was provided, either in Branhaven's counsel's prior communications or in Mr. Paxos deposition, as to why two laptops containing potentially responsive documents were suddenly found *in its attorney's office* seven months after the start of discovery.

These additional facts support Defendants' position that Branhaven utterly failed to make a reasonable effort to search for and produce all responsive documents in a timely fashion as is required by the discovery rules. Instead, Branhaven repeatedly delayed discovery and employed

frustration tactics, waging a war of attrition on Defendants that has rendered them unable to raise capital or operate their businesses while litigation continues to drag on.  To say that Branhaven's counsel's failure to meet their discovery obligations has resulted in unreasonable and vexatious delays would be an understatement.  To date, Defendants have incurred approximately $51,122 in legal fees and expenses related to Branhaven's July 20 document dump, including:  (a) time spent by litigation support analysts in receiving the production and converting it to a reviewable format; (b) time spent by attorneys searching and reviewing the document dump in preparation for depositions; and (c) time spent by attorneys in drafting, filing, and prosecuting this Motion for Sanctions.  Worse, to avoid the harm of further delay the Defendants have proceeded with depositions without full knowledge of what lies within Branhaven's document dump.

Given Branhaven's counsel's role in Branhaven's violations of the discovery rules, including their failure to recommend a litigation support vendor for Branhaven's purported issues accessing the MMI e-mail servers and their failure to identify sources of potentially responsive documents *within their own office*, Defendants also supplement their motion to include a request for sanctions against Steven Leitess, Jennifer Lubinski, and the firm of Leitess Friedberg PC under 28 U.S.C. § 1927.  Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *See also Epps v. Way of Hope, Inc.*, 2010 WL 2025573, at *4 (D. Md. May 18, 2010) (Gauvey, J.) (imposing sanctions and awarding attorneys' fees against counsel that opposed summary judgment without legal support).  Accordingly, Defendants ask this Court to hold Mr. Leitess, Ms. Lubinski, and Leitess Friedberg jointly and severally liable with

Branhaven for the attorneys' fees and expenses sought by Defendants pursuant to their Motion for Sanctions.

Joint and several liability is particularly important in this situation, because Defendants only learned in Mr. Paxos' deposition that Branhaven has "[v]ery little" cash, and has no customers, marketing materials, website, sales, employees, or operations.  *See* Paxos Dep. at 36:20-22; 56:8-21; 39:9-14.  Indeed, Branhaven appears to be merely a shell company that would be unable to satisfy on its own a judgment for attorneys' fees.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Sanctions.

        Respectfully submitted,

By:   /s/
Hugh J. Marbury (Bar No. 24653)
T. Brendan Kennedy (Bar No. 16142)
Benjamin D. Schuman (Bar No. 28829)
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, MD  21209-3600
Telephone:     410.580.3000
Facsimile:     410.580.3001

*Attorneys for Defendants.*